This is Judge Hartz. I'll call 19-5079, Carr v. Commissioner, and the companion case, I'm sorry, I don't have that name here. Amanda Mundell with Counsel for the Appellant, Your Honor. In 1950-85. Very good. Okay, if you'll please proceed. Counsel? Good morning, Your Honors, and may it please the Court, Amanda Mundell on behalf of the Commissioner. With the Court's permission, I'd like to reserve up to three minutes for rebuttal, and I will do my best to listen for that bell. It is a bedrock principle of administrative law that claims not presented to the agency are forfeited and unavailable on judicial review. This Court's decisions in Maloof, Energy West, and Turner Brothers make that much clearer. And this case should be no different. Plaintiffs here failed to raise their Appointments Clause challenge before the agency, and as such, they forfeited that claim. And nothing about these cases makes them so rare or so exceptional that this Court should excuse that forfeiture. First, Appointments Clause challenges are not jurisdictional and are therefore subject to forfeiture. Since Lucia, this Court has repeatedly held that failing to timely present an Appointments Clause challenge to the agency results in forfeiture. The Court held that in Maloof in the FEC context, in Energy West with respect to a claim not raised before the Benefits Review Board, and in Turner Brothers with respect to a claim not raised before the Department of Labor. And this Court is not alone in those holdings. The Second Circuit in Ganella, the D.C. Circuit in Intercollegiate Broadcast Systems, the Federal Circuit in In Re, D.B.C., the Sixth Circuit in Island Creek and Jones Brothers, the Eighth Circuit in NLRB v. Relco Locomotives, and of course the Supreme Court in Freytag all recognize that Appointments Clause challenges are not immune from typical forfeiture procedures. In fact, the only Court to hold otherwise was the Third Circuit in Serco recently, but that decision was badly misguided and I'd be happy to walk through a few reasons why. The first is that it simply rests on a faulty premise that I've just been discussing. The panel assumed that the normal presumption in favor of administrative exhaustion requirements is simply inapplicable to Appointments Clause claims. But we know that since Lucia was decided, five circuits, including this one, have all held that Lucia claims can be administratively forfeited in proceedings before agencies such as the Department of Labor, the DEA, and the FEC. So there's nothing special about an Appointments Clause challenge that categorically takes it outside the realm of forfeiture. And the second reason that Serco got it wrong is because the panel treated Social Security proceedings as though they were special in themselves, explaining that forfeiture would impose a novel burden on claimants. And yet, claimants in Social Security proceedings are not categorically excused from the requirement to raise issues before the agency to preserve them for judicial review. The First Circuit held that in Mills. The Ninth Circuit held that in Scheibe. And that makes sense because forfeiture principles ensure that the agency has notice of potential problems at the time they arise and can take steps to correct them. And make no mistake, raising this type of Appointments Clause challenge to the Social Security Administration at the agency level here would have done exactly that. It would have put the agency on notice that these claims were being made, of the accumulating litigation risk associated with these claims, and the commissioner could have taken steps, and indeed did take steps, to fix that problem by ratifying the appointments of all ALJs in the administration. Counsel? Yes. This is Judge Hartz. I'll pass on questions. Judge Matheson, do you have any questions? Yes. Let me ask you first a question about the decision in Sims v. Apfel. Yes. Could you address why it should matter whether the claimant failed to present the issue to the ALJ rather than the Appeals Council? Absolutely. And I think it's important at the outset to answer your question, Judge, that Sims, you know, acknowledges that there's something very special about the Appeals Council review. It's a fractured opinion, so we really have to look to Justice O'Connor's concurrence there. And what she notes is that the Appeals Council really exercises this sort of plenary review. And it's that particular level of plenary review over claims, coupled with the fact that the form that claimants submit to the Appeals Council really just includes a couple of lines where claimants can identify issues, renders the Appeals Council level not the place where we would normally require a claimant in that circumstance to exhaust. Now, the court took great pains to emphasize that it was not suggesting or deciding the question of whether exhaustion needed to happen at the ALJ level. And I think that's clear because prior cases in the court, including Freytag, make evident that claimants do have an obligation or that plaintiffs do have an obligation to generally exhaust issues and arguments before the agency. And so to answer your question about why it makes sense not to require exhaustion at the Appeals Council level as opposed to the ALJ level, I think that comes back to the special nature of the Appeals Council review, the fact that it is plenary and that there's simply nothing on the form that would really allow for an expansive discussion of what issues ought to be raised. Now, it's certainly different from the burden on the claimant in front of the ALJ. There's regulations that describe that claimants ought to raise objections to their ALJ at the earliest point possible for, you know, things such as their ALJ being biased against them. And that, you know, there's a general presumption that claimants ought to be raising factual matters and other issues before the agency throughout their disability benefits hearing. So just to sort of tie back to that point, I don't think SIMS changes this background understanding that in Social Security proceedings, claimants are not categorically excused from the requirement to raise issues before the agency. And really, Your Honor, other courts have recognized exactly that. Mills in the First Circuit said exactly that about SIMS. Scheibe in the Ninth Circuit and then this court, of course, also recognized that it's an open question still and it's an unpublished decision in Rabban versus Astro. Let me shift gears to something else. You've emphasized the general principle of exhaustion in administrative proceedings, but in the absence of a specific regulation or statute relating to Social Security agency proceedings, did the district court here have any discretion to determine whether exhaustion was required? Absolutely, Your Honor, because I think as your question points out, this is not a case where we are looking for statutory exhaustion, where there's a statute or a regulation on point that requires claimants to raise issues before the agency and that a reviewing court has to decide, one, whether that allows for any discretion, and then two, if so, if there are exceptions to that statutory exhaustion requirement, whether this case fits into those exceptions. This is a case of, you know, judicially imposed exhaustion requirements. And so in that sense, the district court certainly would have had the ability to look at what the claimants failed to do here, which is fail to raise their arguments before the agency, either at the ALJ or the Appeals Council. Well, I guess where I'm going with this, though, is if the district court did have discretion, do we review the district court's decision as to whether there was an exhaustion requirement for abuse of discretion? That's a good question, Your Honor, and we certainly haven't briefed that.  It's a question of whether these sorts of challenges fit within the doctrine. And so in that sense, this court might be able to review it on a de novo level. But even if the review were abuse of discretion, I think it's clear here that, you know, based on this court's precedence alone, that this type of challenge was forfeited, and that in that instance there's – and, you know, this court, again, could look at the facts and say whether or not there were any sort of circumstances that make this case rare or exceptional under Freytag that would excuse it. And there's simply no basis in this case to exercise that discretion in that way. But I do want to sort of tie back to a Supreme Court case with respect to the statute or regulation point, if I may, and that's just that even though forfeiture principles are not often codified in statute – or are often codified in statute, they're not always. And particularly in a Social Security context, that may be the case. And so background exhaustion principles, long established by cases like L.A. Tucker, Supreme Court's decision there, remain at play. Go ahead, Your Honor. Carson, do you have any questions? I do, and this is tying back to Judge Mathison's question about whether we might review the Supreme Court's decision for an abuse of discretion. And I guess what I'm thinking as we're sitting here having this conversation is I'm wondering, the district court in this case found that there was no exhaustion requirement. And I guess I'm wondering whether we would be looking to see if the district court, you know, was wrong as a matter of law that there was no exhaustion requirement, as opposed to whether the district court – on a different question, it would be whether the district court abused its discretion in determining that there was an excuse for not exhausting. Do you see where I'm headed with that? Yes, Your Honor, and I probably did not articulate that quite as well, but that was sort of the very first response that I intended to give, which is this idea that as a matter of law, the question is sort of whether this type of challenge fits within, you know, the forfeiture principles and doctrine. And the district court here, or the magistrate judge here, simply read Sims and concluded that Sims dictates that these sorts of challenges need not be raised to the agency, and so as a matter of law, we don't think that's correct at all. I don't read the district court or the magistrate judge to have just simply excused forfeiture. The judge didn't discuss that at all, and that may be a discretionary point. But certainly the issue of whether this claim needed to be raised as a matter of exhaustion, that's the first place that we think the magistrate judge went wrong. And that, I think, is a question of law that this court could review de novo. And what, just as a practical matter, if this had been raised before the agency, what could the agency have done about it? Could they have granted release? You know, absolutely, Your Honor. I think if this claim had been raised to the ALJ or to the Appeals Council level, the claimants here couldn't have gotten a decision from that ALJ or from that particular Appeals Council that would allow for the, you know, or that would have cured the ALJ's appointment. But that's sort of the very point and the nature of exhaustion in the first place. Raising these claims to the agency at some level puts the agency on notice that these claims exist and of the accumulating litigation risk as described in L.A. Tucker. And as a result, the agency, the commissioner, is in a position to fix that problem. And, in fact, we know that that's exactly the case here because after Lucia came down, the commissioner, especially in light of some of these challenges that had been raised, the commissioner went ahead and ratified the appointments of those ALJs. So this is definitely something within the agency's control. And that's really one of the major reasons why, even if this court were to find that forfeiture applies, that this court shouldn't excuse the forfeiture here because claimants were, you know, to the agency during their hearings and or, you know, to the appeals council on review. And the claimants didn't even raise it in their complaint to district court. They waited until Lucia had been decided to raise it to the magistrate judge in briefing. And so this is not one of those rare exceptional circumstances that exist to excuse forfeiture in this context. So compare this case to a case where you have an SEC administrative law judge and it's raised to the SEC that the appointments clause had been violated. Would they have any authority for the administrative law judges of the SEC? Would they have more authority to grant relief than a Social Security judge would? Your Honor, I'm not as well versed in SEC regulations or the statute, but I don't believe so. And I think that's exactly what happened in Lucia. Lucia timely raised the claim, notwithstanding the fact that there may not have been a remedy at that particular moment or from that particular judge. But regardless, it's clear from the Supreme Court's case law and this court, and especially Malouf, that there need not be, you know, the particular case law on point that allows you to win that claim at the agency or even that the exact remedy you seek needs to be available at that moment in the agency. It's enough to put the agency on notice that those claims exist so that the agency can later fix them. Counsel, this is Judge Hart. Excuse me. Did Cora or Minor argue in district court that either of them came under some exception to an exhaustion requirement, that there was some excuse for them not to exhaust? No, Your Honor. In fact, if you look back at the briefing, really the only thing they point to is that the Lucia decision had just been issued and that based on Lucia, the ALJs in their cases were not constitutionally appointed. And so there really hasn't been any argument that they've advanced that suggests that there's a reason to excuse it. And by the way, the mere fact that Lucia came down after they'd had their ALJ hearings is not relevant because as this court said in Malouf, you know, you can't excuse a failure to exhaust merely because, you know, a particular law hasn't been decided or settled through, you know, Supreme Court case law. Unless there are other questions. Let me ask one more question. Would your position be the same if Cora and Minor had been acting pro se in Social Security proceedings? Your Honor, I think that's a difficult question. It's certainly not present in this case, especially because they were represented at all times. But to the extent the court were worried about that, it wouldn't really need to craft a rule that broadly. It could just limit it to, you know, the claimants before it here, which were represented by counsel. And with the court's permission, I'd like to reserve the balance of my time. I think I probably have about 20 seconds for rebuttal. Let me first ask if either of the – Judge Mathison, do you have any further questions? Nothing further. Judge Carson? I'll wait for rebuttal if you'll give me some leeway. Okay. Thank you. Thank you, Your Honor. Thank you. Mr. McTighe? Yes, Your Honor. Thank you. May I proceed? Yes, please. My name is Paul McTighe, Jr. I'm an attorney from Tulsa, Oklahoma. I'm the attorney of record for the Appellees in this Consolidated Appeal. I'd like to thank you for giving my clients the opportunity to present their cases to the Honorable Court today. I'm honored today to represent Willie Earl Carr and Kim L. Minor, the Appellees in this Consolidated Appeal. They both live in Tulsa, Oklahoma and have been seeking Social Security disability benefits for several years. The following points in this case are not in contention. The Social Security Administration has conceded that the ALJs involved were appointed in a manner that was in conflict with the Appointments Clause of the United States Constitution. Furthermore, the Appellees concede that they first raised the issue of the unconstitutional appointment of the ALJs in their district court briefs that were filed on behalf of Carr on October 23, 2018, and Minor January 30, 2019. The district court in both cases relied on the United States Supreme Court cases of Lucia v. the SEC that was decided in 2018 and Sims v. Appell decided in 2000. I think we understand what the Lucia case is. Sims was a case involving Social Security disability law and the exhaustion of administrative remedies. The district court relied on that case, the Sims case, and concluded that the claimants in this case need not also exhaust their issues regarding the Appointments Clause. The court looked at Sims for the following factors. Number one, the requirements to exhaust issues are creatures of statute and there is no statute that requires issue exhaustion before the Social Security Administration. Two, while it is common for agency regulations to require issue exhaustion, Social Security regulations do not require it. Three, the reasons why courts generally impose issue exhaustion requirements do not apply in the non-adversarial process of the Social Security Administration. Four, the Social Security Administration does not notify claimants of an issue exhaustion requirement. The district court noted that it had been 19 years, which is now 20 years, that had elapsed since the Sims decision and during that time Social Security has not enacted a regulation requiring issue exhaustion and that Social Security disability law is non-adversarial and the claimants are still not notified of any issue exhaustion requirement. A number of district courts and now one appellate court, the Third Circuit in the Serco case, have decided the issue. And I went back and I've read the majority of these cases and I believe that the first wave of cases were cases that had been briefed and argued and in some cases they tried to bring the issue in on a procedural matter at the end of the case, such as arguing it for the first time in the magistrate's, arguing it against the objection to the magistrate. And those, many of those courts argued or ruled that the claimants had forfeited the issue because it wasn't raised before, because of Sims, it has to be raised, the only place it could be raised would be the administrative law judges. Counsel, this is Judge Hart. I don't have questions now. Judge Matheson, would you like to ask any questions? Well, as long as counsel is talking about Sims, let me ask him a Sims question, which concerns failure to raise an issue before the appeals counsel. Could you address how Sims supports the notion that the claimants don't need to raise the issue before the agency at all? I don't think it says that. Well, Sims does not say that. And up to now, there were several cases cited by the appellant. There's a First Circuit case. There was three cases, the Ninth Circuit on the Sciabba case. And in all of those cases, these were simple things. It appeared to me these were simple things that could have been argued or should have been argued. For instance, in that Ninth Circuit case, Sciabba, there was an argument. They decided to, in the appellate part of the case, they decided to challenge the vocational expert's estimate of number of jobs available. The attorney at the hearing didn't even cross-examine. I don't understand why they brought it up at that point. And I think it's almost a de minimis test as to how you would assert an issue at the administrative level. One of the things on Sims was the issue that was not raised to the appeals council also not raised in the administrative law judge hearing. Okay, are you talking about the Sims case? Yes. Oh, okay. I have absolutely no idea. At that time, and I've practiced in this field since 1979, and at the time the Sims case came up, there was a great issue going around the country with the department. And the Social Security Administration attorneys were arguing this. And they were arguing, oh, you didn't raise your issues at the appeals council, so therefore you have waived them. And as far as the exact issues in Sims, I can tell you I don't know. But this had gone on for several years. Sims answered the question. Now, here's what happens with the appeals council. In some cases, pro se claimants or even attorneys file a form. You can do the form now electronically, but they file a form. It used to be like one of these pull-out forms that carbon was in it. And the form gives you three lines to put the reasons why you feel error was made. And I believe Justice O'Connor in the Sims case concurred and mentioned that, that you just had three lines to argue. Well, in many cases, that's all that's sent in. And then it's left up to the appeals council to make a decision. Now, a better practice... Let me ask if Judge Carson has any questions at this point. Yes, sir. No, I don't have any questions. Thank you. Let me ask a question, counsel. The Social Security regulations do require that a party, a claimant, having concerns about the bias of the AIJ must raise those at the first opportunity. Is that correct? That's correct. That's correct, bias. And it's a tall mountain to climb. I believe it's a tall mountain to climb. I've handled over 6,000, 6,500 hearings. I did bring it up one time, and it ended up that nothing came of it. And in the end, the judge and I became friends. Okay. You may proceed, Judge Matheson. Did you have any questions, any further questions? Yes. I had one other question. The district court affirmed the denial of your client's disability claims on the merits, as I understand it. But you're not contesting that ruling on appeal. Is that correct? That's correct. Well, I suppose my question then is, if you're not contesting the denial of the claims on the merits, what's our case or controversy at this point? The fact that the decision was made by the judge who was not constitutionally appointed, I don't know. I'm not going to say that it voids it, but it puts it back to square one. The Lucia case required the case to go back to a different ALJ. Normally, when a case is remanded, it does go back to the beginning, as if it didn't happen. Okay. Well, I think I understand the argument. I was just interested in the fact that you haven't challenged a decision that still stands at the district court level that your clients aren't entitled to benefits. Yes, sir. I don't know what more I could answer on that, other than the court did order it to order remand with a different ALJ as part of the remedy. The Serco case, if you go through it, I think it provides a much better roadmap than I can in terms of the law, and it goes through the fact that there was no statute, no regulation. Social Security also has rulings that it makes, which are also a roadmap. I note that they did that in this case, or not in this case, but they did it in this issue under Social Security Ruling 19-1-P, which is actually a procedure that the Social Security Administration put together on March 15, 2019. As far as I know, that was the only writing, only procedure that Social Security had actually set up. They did have an emergency notice that they sent out to their ALJs sometime before that. But on March 15, 2019, they provided us and their administrative law judges and the appeals council judges with a procedure. And I've seen this, that it actually has worked in cases that are at the appeals council. It's not going to work with the ALJs because this whole system, this whole situation has become very narrow. It's only for claimants who had cases that were decided by administrative law judges prior to the reappointment date of July 16, 2018. People can't come in today and say it unless there are some cases, I'm going to admit, they're buried at the appeals council, that were decided before that reappointment date, and I believe that they would be able to get relief. Okay, counsel, let me interrupt just to see if Judge Carson has a question. Does he have any questions? I don't, thank you. And Judge Matheson? Nothing further. Okay, so you still have some time, counsel, you may proceed. I've got about a minute. Yes, the... Counsel, as long as you have a minute, I'm going to ask you a question. This is Judge Matheson. To what extent are you relying on the Supreme Court's decision in Lucia as a reason for not raising this issue before the agency? I'm not. I'm not, because Lucia did not provide a bright-line test as to what was timely, and the court had that put in timely. They said it must be done timely, but they didn't tell us what that meant, and in the context of the Lucia case, it was timely. So I'm not relying on it. I'm relying on it on the, which, a point that's really not part of the case. It was the secretary or the commissioner conceded that their judges were not appointed in a constitutional manner, and that's not an issue here. That could have been an issue that we would be arguing for 30 minutes. Okay, my time is up. Yeah, perfect timing. Thank you, counsel. Ms. Bundell, you have a few seconds. Are you on mute? I can't hear you. Sorry, Your Honors. I am on mute, and I am back. I just wanted to make one point with these final few seconds, which is just that, picking up on Judge Matheson's question with respect to the district court affirming the denial of the merits, this is the exact sort of situation of the equities that we find ourselves in, where allowing claimants a do-over here would really just be at odds with not just the reasoning of this court and the majority of circuit courts, but would create perverse incentives, sandbagging, and gamesmanship, and work a grave unfairness on those claimants who have been patiently waiting to adjudicate their benefits. Claims for the very first time. Thank you. I think Judge Carson was holding back on a question. Did you have a question now, Judge Carson? I do. I do. Thank you. Counsel, in the District of New Mexico, Judge Browning recently had a case, McCray v. Social Security Administration, where he adopted a position that's contrary to yours. One of the things that he primarily relied on, I guess he basically poured out your arguments on every position he could, but one of the things I think he primarily relied on was the idea that it would have been futile to present this argument to the agency because they couldn't have granted any relief. And I brought that up with you before. Do you, I mean, what is your, other than just saying, gosh, they could have raised it and they could have gone and had the commissioner appoint everybody, I mean, what legal grounds could the ALJ or the Appeals Council have relied on to grant any relief if this had been raised? So a couple of responses to that, Your Honor, and I know we're over time, so I'll try to keep it brief. I think the important question is not whether at the ALJ level or at the Appeals Council there is some available remedy, but whether the agency as a whole can give a remedy. And that's true from cases like Ellie Tucker, and it's especially true from this court's decision in Maloof, because it's important to bear in mind that when this court is thinking about this type of futility argument, Maloof's standard is whether presenting the claim to the agency would be clearly useless. And there Maloof said in Reliance and Ellie Tucker that so long as the agency as a whole is put on notice of the claim, that's enough to render raising the claim not clearly useless, and it's enough to defeat any futility argument. And that's, of course, true here, because if claimants had raised these claims to the agency, even if the ALJ couldn't have ordered a new hearing before another appointed ALJ, or even if the Appeals Council hadn't done so, they could have tracked that claim and notified the commissioner, or the commissioner could have just been aware of it merely because it had been raised. And we know that the commissioner had the power to fix this problem because the commissioner, in fact, did so in 2018 right after Lucia was decided. So I certainly don't think there's a basis for a futility argument here, Your Honor. And in any event, plaintiffs really haven't made that argument here. Thank you, counsel. Time has expired. The case is submitted, and counsel are excused. Thank you.